**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Kathleen Mary Atkins,

      Plaintiff,

v.

Commissioner of Social Security Administration,

      Defendant.

No. CV-25-00020-TUC-JGZ

**ORDER**

On October 30, 2025, Magistrate Judge James E. Marner issued a Report and Recommendation ("R&R") recommending the Court reverse the Administrative Law Judge's ("ALJ") decision and remand to the Commissioner for further proceedings. (Doc. 21.) Plaintiff Kathleen Mary Atkins filed a timely Objection to the R&R, and the Commissioner filed a Response. (Docs. 22, 23.) Having reviewed the record, the R&R, and the arguments raised in Plaintiff's Objection, the Court will adopt in part and reject in part the Recommendation and remand to the agency for calculation of benefits.

## I.     R&R Standard of Review

When reviewing a magistrate judge's R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). The party seeking de novo review must provide "specific written objections to the proposed findings and

recommendations" of the magistrate judge. Fed. R. Civ. P. 72(b)(2). "[D]istrict courts conduct proper de novo review [of a magistrate judge's findings and recommendations] where they state they have done so, even if the order fails to specifically address a party's objections." *United States v. Ramos*, 65 F.4th 427, 433 (9th Cir. 2023) (citing *Wang v. Masaitis*, 416 F.3d 992, 1000 (9th Cir. 2005)).

## II.     Factual & Procedural History

Since neither party objects to the Magistrate Judge's summary of the factual and procedural background, the Court adopts this section of the R&R in its entirety. (Doc. 21 at 2–8.) The Court summarizes below the facts and procedural history relevant to the Objection.

On August 2, 2022, Plaintiff filed a Title II application for disability insurance benefits, alleging disability as of March 31, 2022 due to seizure disorder, migraine headaches, major depressive disorder, posttraumatic stress disorder ("PTSD"), bipolar disorder, schizoaffective disorder, attention deficit hyperactivity disorder, anxiety disorder, and obesity. (*Id.* at 2); AR 17–18. Plaintiff's application was denied initially and on reconsideration. (Doc. 21 at 2.) On March 28, 2024, ALJ Amy Benton issued an unfavorable decision. (*Id.*) On November 27, 2024, the Social Security Administration ("SSA") Appeals Council denied Plaintiff's request for review and adopted the ALJ's unfavorable decision as the agency's final decision. (*Id.*) This appeal followed.

In the unfavorable decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 9, 2022; suffers from the severe impairment of lumbosacral spondylosis; and does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 2–3.) The ALJ found Plaintiff's seizure disorder, migraine headaches, and obesity were medically determinable but not severe. AR 18. The ALJ found most of Plaintiff's alleged mental health disorders not medically determinable because "they are not established by diagnosis from and evidence from acceptable medical sources." *Id.* The ALJ found two of Plaintiff's mental health disorders—schizoaffective disorder – bipolar type and PTSD—medically determinable but non-severe because they

do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities. *Id.* The ALJ considered the four areas of mental functioning, the Paragraph B criteria, and found Plaintiff had mild limitation in each. *Id.*

In finding Plaintiff's schizoaffective disorder and PTSD non-severe, the ALJ reasoned that the record indicated the disorders were chronic and had not previously precluded employment; although Plaintiff subjectively reported extreme mental health symptoms, her treatment had stayed routine, conservative, and outpatient; and given Plaintiff's longitudinal examination presentation, which typically involved normal and intact functioning, there was little objective support for more than mild limitation in any of the Paragraph B criteria. *Id.* at 18–19. Citing the same reasons, the ALJ found the opinions of the State agency psychological consultants and Nurse Practitioner ("NP") Castillo's[1] treating medical opinion[2] unsupported and inconsistent with the record as a whole, and therefore, unpersuasive. *Id.* at 19–20. The ALJ found Plaintiff's Paragraph B limitations,

> [S]o slight that they do not cause any measurable loss of function in mental abilities to understand, remember or carry out instructions, to make work related decisions, or to respond appropriately to supervisors, coworkers, usual work situations, changes in work setting, or work pressures in a work setting. Thus, the following residual functional capacity assessment does not reflect any limitation in mental abilities.

*Id.* at 20.

The ALJ determined Plaintiff's residual functional capacity ("RFC") as the ability to perform light work as defined in 20 C.F.R. § 404.1527(b) except that she can occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, and crawl; and occasionally be exposed to hazards, such as unprotected heights and moving mechanical parts, and industrial types of vibration. (Doc. 21 at 3.) In determining Plaintiff's RFC, the ALJ discounted Plaintiff's physical symptom

---

[1] Castillo is a psychiatric mental health nurse practitioner ("PMHNP").

[2] NP Castillo's "Medical Source Assessment (Mental)" suggested three tasks or functions that Plaintiff would have noticeable difficulty with from 11 to 20 percent of the work day or work week: (a) maintaining attention and concentration for extended periods of time; (b) working in coordination with or proximity to others without being distracted by them; and (c) completing a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 1149.

- 3 -

testimony as inconsistent with medical evidence and other evidence in the record. AR 22–24.

At step four, relying on the vocational expert's ("VE") testimony from the hearing on March 5, 2024, the ALJ found Plaintiff capable of performing past relevant work as a 911 dispatcher, plumbing dispatcher, and call-center representative, and that such work does not require the performance of work-related activities precluded by her RFC. (Doc. 21 at 3); AR 65. Therefore, the ALJ found Plaintiff not disabled at step four.

The ALJ made an alternative finding that Plaintiff would not be disabled at step-five even if the ALJ found Plaintiff's mental disorders severe and included the following mild mental functioning limitations: (a) limited to understanding, remembering, and carrying out simple instructions; (b) occasional interaction with supervisors, coworkers, and the public; (c) make only simple work-related decisions; (d) tolerate only occasional change in work location; and (e) unable to work at a strict production-rate, such as the rate required to work on an assembly line. AR 26–27. The VE testified that if Plaintiff's RFC included these mild mental functioning limitations, Plaintiff could not perform her past work but could perform other jobs that exist in significant numbers in the national economy, including mail room clerk, cleaner, and price marker. AR 65–66.

The VE also testified that, if a person with Plaintiff's RFC (including the mild mental functioning limitations) would be absent from work, late to work, or would need to leave work early due to health concerns approximately once per week, they would be unable to perform any work in the national economy. AR 66. The VE testified that a worker with the mental functioning limitations assessed by NP Castillo, *see supra* note 2, would be unable to perform Plaintiff's past work or the jobs the ALJ based her step-five finding on—mail room clerk, cleaner, and price marker. AR 68–69.

III.    **Discussion**

In her appeal to this Court, Plaintiff argued the ALJ committed reversible error by: (1) concluding Plaintiff's mental impairments were not severe but failing to sufficiently explain that conclusion and improperly rejecting medical opinions; and (2) rejecting Plaintiff's physical symptom testimony. (Doc. 14 at 13, 20.)

- 4 -

In his R&R, Magistrate Judge Marner concluded the ALJ did not err at step two in finding Plaintiff's mental impairments non-severe but recommends this Court remand for further proceedings because the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony. (Doc. 21 at 13, 22–23.) The Commissioner does not object to the R&R's conclusion regarding Plaintiff's physical symptom testimony and asks the Court "to adopt the R&R's recommendation for remand for further proceedings." (Doc. 23 at 2.) The Court has reviewed the record and the parties' positions on this issue and agrees with the R&R's findings on this issue. *See Reyna-Tapia*, 328 F.3d at 1121. Thus, the Court adopts Judge Marner's findings and recommendation that reversal is warranted because the ALJ failed to provide specific, clear and convincing reasons supported by substantial evidence to reject Plaintiff's physical symptom testimony.

Plaintiff objects to the R&R's conclusion that the ALJ properly found Plaintiff's mental impairments were not severe and objects to the recommendation to remand for further proceedings, rather than remanding for an award of benefits. (Doc. 22 at 2.) The Court will address the objections in turn.

### A. Legal Standard

The Court will "set aside a denial of Social Security benefits *only* when the ALJ['s] decision is based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (emphasis added). "Under the substantial-evidence standard, a court looks to the existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (citation omitted) (alterations in original). Substantial evidence is not a high standard and "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ "must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

//

- 5 -

**B. The ALJ's Finding that Plaintiff's Mental Impairments were not Severe**

At Step Two of the sequential evaluation process, the SSA considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). "Step two is merely a threshold determination meant to screen out weak claims. . . . It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). The ALJ must consider limitations arising from both the claimant's severe and non-severe impairments in determining the RFC. *Id.* at 1049. Here, the ALJ found Plaintiff's mental impairments not only non-severe, but also so slight that they do not cause any measurable limitations in mental functioning, and therefore, the RFC did not reflect limitations from mental impairments. AR 20, 22–24.

The Magistrate Judge found that the ALJ did not err in finding Plaintiff's mental impairments non-severe because the ALJ performed an alternative step-five analysis and found her non-disability finding would be supported even if she found Plaintiff's mental impairments were severe and caused mild functional limitations. (Doc. 21 at 12–13 (citing AR 27).) Plaintiff objects on the basis that, by relying on the alternative step-five analysis, the R&R failed to address her argument that the ALJ failed to provide a sufficient rationale to reject NP Castillo's treating medical opinion. (Doc. 22 at 4.) Plaintiff maintains the ALJ's error was not harmless because the VE testified that an RFC with the limitations assessed by NP Castillo would preclude Plaintiff from performing her past work and the jobs in the national economy identified in the step-five analysis. (*Id.* (citing AR 68–69).) The Court agrees with Plaintiff that the alternative step-five finding did not necessarily render the ALJ's rejection of NP Castillo's medical opinion harmless because the ALJ's alternative step-five finding was based on an RFC with milder mental functioning limitations than assessed by NP Castillo. (*See* Doc. 14 at 20 n.6; Doc. 22 at 4). Thus, the Court will review de novo whether the ALJ erred in rejecting NP Castillo's medical opinion.

//

**1. ALJ's Rejection of NP Castillo's Treating Medical Opinion**

ALJs must consider medical opinions and articulate the opinions' persuasiveness using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(a)–(c). The most important factors are supportability—the extent to which the medical source's objective medical evidence and supporting explanations back up their opinion—and consistency—whether the medical source's opinion is corroborated by evidence from other sources. *Id.* § 404.1520c(c)(1)–(2). When rejecting a treating medical opinion as unsupported or inconsistent, the ALJ must provide an explanation, supported by substantial evidence, of how she considered the supportability and consistency factors. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(b), c(b)(2)).

Regarding supportability, here the ALJ found the "suggested areas of essentially moderate limitation" were "only marginally supported by Nurse Castillo's own records," because her records "document extensive subjective symptoms but typically document normal objective mental status examination findings and stable medication management." AR 20. Regarding consistency, the ALJ found NP Castillo's opinion inconsistent with the record as a whole because: (1) Plaintiff's mental health treatment "remains routine, conservative, and entirely outpatient, a level of care not indictive [sic] of severe mental health impairments"; and (2) given Plaintiff's longitudinal examination presentation, which typically revealed normal and intact functioning, "there is little objective support for significant mental functioning limitations." AR 20.

First, the ALJ's finding that Plaintiff's mental health treatment was conservative is not supported by substantial evidence. "[M]edication for the treatment of psychiatric disorders is generally not considered to be 'conservative treatment,'" *Moreno v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00319-PHX-DLR, 2023 WL 4926258, at *4 (D. Ariz. Aug. 2, 2023), and "psychiatric hospitalization is not a benchmark for conservative treatment," *P.E. v. Saul*, 445 F. Supp. 3d 306, 334–35 (N.D. Cal. 2020). From October 21, 2022 to February 9, 2024, NP Castillo prescribed Plaintiff Seroquel, lamotrigine, hydroxyzine HCl,

prazosin, Latuda, buspirone, and guanfacine to treat her mental disorders and symptoms. AR 550, 555, 562, 589, 621, 1089.[3] The ALJ cited "stable medication management" as a reason NP Castillo's opinion was not supported. AR 20. However, NP Castillo prescribed new medications, canceled previously prescribed medications, and adjusted medication dosages on nine occasions during the relevant timeframe in response to reported side effects and symptoms. AR 561–63, 593, 621–23, 925–26, 936, 1062, 1071, 1079–80, 1088–89. Thus, the ALJ erred in relying on Plaintiff's mental health treatment to find NP Castillo's opinion unsupported and inconsistent.

Second, the ALJ failed to sufficiently explain her finding that objective mental status examination findings rendered NP Castillo's opinion unsupported and inconsistent with the record as a whole. As to supportability, the ALJ did not explain *why* the cited mental status examination findings in NP Castillo's records conflicted with her assessed limitations regarding Plaintiff's sustained attention and concentration, ability to work with others without distraction, and ability to complete a workday without interruptions from psychologically based symptoms. *See Jones v. O'Malley*, No. 23-16136, 2024 WL 3963835, at *2 (9th Cir. Aug. 28, 2024). Without elaboration, the ALJ cited 438 pages of treatment records and concluded NP Castillo's records "typically document normal objective mental status examination findings . . . inconsistent with the suggested areas of functioning with difficulty from eleven to twenty percent of the workday or work week." AR 20; *see Morris v. Berryhill*, 358 F. Supp. 3d 875, 882 (D. Ariz. 2019) ("Listing some general mental status findings and then citing generally to a 300-page exhibit is not sufficiently specific.").[4] Thus, "[b]y focusing on a few normal findings observations

___

[3] Medication was not the only treatment Plaintiff sought to alleviate her mental disorders. NP Castillo also stated Plaintiff was "engaging in intense psychotherapy," AR 1150, which is supported by the record. *See, e.g.*, AR 432, 467, 532, 534, 538, 540.
[4] Additionally, the ALJ appears to have discounted NP Castillo's opinion because it was based on Plaintiff's self-reports, but the ALJ never explicitly found Plaintiff's self-reports not credible or explained her basis for concluding that NP Castillo's opinion was based more heavily on Plaintiff's self-reports than on her own clinical observations. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Bogner v. Comm'r of Soc. Sec. Admin.*, No. CV-22-01908-PHX-DMF, 2023 WL 4734120, at *4 (D. Ariz. July 25, 2023) (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)) ("[A]n ALJ typically cannot reject a treating physician's opinion on the basis that it does not contain explanations or is based in part on a claimant's subjective complaints.").

without comprehensively addressing the objective medical evidence and NP [Castillo]'s own treatment notes that could corroborate or detract from her assessed limitations, the ALJ's decision lacks a sufficient analysis of the supportability factor." *Ain v. Comm'r of Soc. Sec. Admin.*, No. CV-24-00008-DLR (ESW), 2024 WL 4529376, at *5 (D. Ariz. Sept. 30, 2024), *report and recommendation adopted*, No. CV-24-00008-PHX-DLR, 2024 WL 4528444 (D. Ariz. Oct. 18, 2024).

As to consistency, again the ALJ relied on mental status examination findings from Plaintiff's appointments with various providers and generally cited 16 exhibits covering 796 pages of medical records. AR 20. Although the ALJ cited specific findings—e.g., Plaintiff presented as alert, attentive, calm, polite, fully oriented, with intact cognition—the ALJ did not explain how any of those findings were inconsistent with NP Castillo's assessed limitations. *See Miller v. Comm'r of Soc. Sec. Admin*, No. CV-23-00664-PHX-SPL (DMF), 2024 WL 4291443, at *4 (D. Ariz. Jan. 3, 2024), *report and recommendation adopted*, No. CV-23-00664-PHX-SPL, 2024 WL 4290779 (D. Ariz. Sept. 25, 2024). "Moreover, 'the affect and mood notes the ALJ emphasized simply described how [Plaintiff] presented on the days of her appointments. They were not general assessments.'" *Morris*, 358 F. Supp. 3d at 882 (quoting *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018)). And "observations of cognitive functioning during therapy sessions do not contradict [Plaintiff]'s reported symptoms of depression and social anxiety." *Ghanim*, 763 F.3d at 1164 (reasoning treatment notes discussing claimant's good eye contact, organized and logical thought content, and focused attention did not undermine reported systems of frequent nightmares, hallucinations, social anxiety, difficulty sleeping, and feelings of hopelessness); *see also Morris*, 358 F. Supp. 3d at 882–83 (rejecting ALJ's inconsistency finding because treating provider's assessed limitations "were not limited to cognition issues, but included limitations that flowed from plaintiff's depressive and schizoaffective disorders").

In sum, the ALJ did not provide an explanation supported by substantial evidence when she rejected NP Castillo's treating opinion as unsupported and inconsistent. *See*

- 9 -

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). As discussed above, this error was not harmless because the ALJ's alternative step-five non-disability finding was based on an RFC with less restrictive mental limitations than NP Castillo assessed. Therefore, reversal is warranted for this additional reason.

### C. Remand for Calculation of Benefits Is Appropriate

Plaintiff asks the Court to reject the R&R's recommendation to remand for further proceedings and, instead, remand for calculation and payment of benefits. (Doc. 22 at 7–9.) Ordinarily, where a court determines the agency erred in reaching its decision to deny benefits, the court will remand to the agency for further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099–100 (9th Cir. 2014). The Court may remand to the agency with instructions to calculate and award benefits if the three conditions of the credit-as-true rule are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all three conditions are met, the Court must remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Here, Plaintiff satisfies all three conditions of the credit-as-true rule. First, the record is fully developed, and further administrative proceedings would not be useful. "There are no ambiguities or gaps in the record, nor are there material issues that necessitate additional fact-finding." *Moreno*, 2023 WL 4926258, at *7. Second, for the reasons described above and in the R&R, the ALJ failed to provide legally sufficient reasons for rejecting NP Castillo's medical opinion and Plaintiff's physical symptom testimony. Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. When asked questions describing a hypothetical person with the RFC that Plaintiff would possess were NP Castillo's opinion and Plaintiff's symptom testimony taken as true, the VE answered that such a person would be unable to work. *See*

*Garrison*, 759 F.3d at 1021 n.28; AR 65–66, 68–69.

The Commissioner argues the record as a whole creates doubt that Plaintiff is disabled. (Doc. 23 at 4–6.) The Court disagrees. Plaintiff's physical symptoms and limitations are supported by the record, including examination findings, diagnoses, and an aggressive course of treatment. (*See* Doc. 21 at 3–8, 18–19); AR 780–81, 783–84, 789, 793, 828, 831, 840, 844, 1214. Although, as the Commissioner notes, Plaintiff reported periods of improvement in her back pain after receiving injections, *see* AR 801–02, 805–07, Plaintiff's pain was persistent, did not respond to various medications, and eventually required lumbar nerve ablation. *See, e.g.*, AR 788, 1165, 1213. With respect to Plaintiff's mental impairments, the Commissioner relies entirely on the unremarkable mental status examination findings the ALJ also relied on to discount NP Castillo's opinion. For the reasons discussed above, that evidence does not create serious doubt that Plaintiff is disabled, and the Commissioner does not point to, nor does the record contain, any medical opinions on Plaintiff's mental impairments that contradict NP Castillo's limitations assessment.[5] *See Garrison*, 759 F.3d at 1021–22 (reasoning courts should not "remand for the purpose of allowing the ALJ to have a mulligan" where the conditions of the credit-as-true rule are met). Thus, remand for an award of benefits is appropriate.

Accordingly,

//

//

//

//

//

---

[5] The ALJ also considered the State agency psychological consultants' opinion regarding Plaintiff's mental impairments and limitations. AR 19. The State agency psychological consultants found Plaintiff had moderate limitation in the same, or similar, areas of mental functioning as NP Castillo: (1) the ability to maintain attention and concentration for extended periods; (2) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (3) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 78–80, 82. The ALJ rejected that opinion for the same reasons she rejected NP Castillo's opinion. *Id.*

**IT IS ORDERED**

1.     Magistrate Judge Marner's R&R (Doc. 21) is **adopted in part and rejected in part.** The Court adopts the R&R's finding that the ALJ erred in discounting Plaintiff's physical symptom testimony but rejects the R&R's findings that (a) the ALJ did not err in discounting NP Castillo's medical opinion and finding Plaintiff's mental impairments non-severe, and (b) remand for further proceedings is the appropriate remedy.

2.     The final decision of the Commissioner is **reversed and remanded** for the calculation and payment of benefits.

3.     The Clerk of Court shall enter judgment accordingly and close the file in this matter.

Dated this 24th day of March, 2026.

_____
Jennifer G. Zipps
Chief United States District Judge